UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DLJ MORTGAGE CAPITAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> EASTERN AMERICAN MORTGAGE COMPANY, <br><br> Defendant. | Case No. 07-CV-7933 (PKL) |

**PLAINTIFF DLJ MORTGAGE CAPITAL'S INC.'S INQUEST MEMORANDUM**

Plaintiff DLJ Mortgage Capital, Inc. ("**DLJMC**") respectfully submits this Inquest Memorandum, the Affidavit of Bruce S. Kaiserman (the "**Kaiserman Affidavit**") and the exhibits annexed thereto, and the Declaration of Robert A. Pinel, Esq. (the "**Pinel Declaration**"), in compliance with Magistrate Judge Douglas F. Eaton's March 6, 2008 Scheduling Order, issued in connection with the Order entered by District Judge Peter K. Leisure, granting a default judgment in favor of DLJMC and against defendant Eastern American Mortgage Company ("**Eastern American**").

**PROPOSED FINDINGS OF FACT**

**A.    The Parties**

1.    Plaintiff DLJMC is a corporation organized and existing under the laws of the state of Delaware. DLJMC is a purchaser of mortgage loans and maintains its principal place of business in New York, New York.[1] Complaint ¶ 8.

---

[1] Because Eastern American's default has been established, DLJMC's well-pleaded allegations concerning issues other than damages must be accepted as true. Bambu Sales, Inc. v. Ozak

272260 v1                                1

2.      Defendant Eastern American is a corporation organized and existing under the laws of the state of New Jersey. Upon information and belief, Eastern American is a mortgage broker and maintains its principal place of business in Little Falls, New Jersey. Kaiserman Affidavit at ¶3.

**B.      Eastern American's Obligations Under the Purchase Agreement**

3.      On May 1, 2005, DLJMC and Eastern American entered into an Amended and Restated Seller's Purchase, Warranties and Interim Servicing Agreement (the **"Purchase Agreement"**). Kaiserman Affidavit at ¶4. (A copy of the Purchase Agreement is attached to the Kaiserman Affidavit as Exhibit "A".)

4.      Under the Purchase Agreement, Eastern American would originate and sell mortgage loans to DLJMC in accordance with the terms of the Purchase Agreement. Kaiserman Affidavit at ¶5.

5.      Pursuant to Section 3.05 of the Purchase Agreement, entitled "Repurchase of Mortgage Loans with Early Payment Defaults," Eastern American agreed to repurchase from DLJMC certain mortgage loans as to which there occurred payment defaults within three months after the Closing Date (as defined in the Purchase Agreement) for such Mortgage Loans. Section 3.05 of the Purchase Agreement specifically provides as follows:

> If (a) a Mortgagor is thirty (30) days or more delinquent with respect to any of the first three (3) Monthly Payments due to [DLJMCJ on the related Mortgage Loan immediately following the applicable Closing Date . . . [Eastern American], at [DLJMC's] option, shall promptly repurchase such Mortgage Loan from [DLJMC] within fifteen (15) Business Days' of receipt of written notice from [DLJMC], in

---

Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Au Bon Pain Corn. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

272260 v1                                                    2

> accordance with the procedures set forth in Section 3.03 hereof, however, any such repurchase shall be made at the Repurchase Price.

Purchase Agreement, § 3.05. Kaiserman Affidavit at ¶6

6.  Thus, the Purchase Agreement expressly and unambiguously confers upon DLJMC the right to cause Eastern American to repurchase, and imposes on Eastern American the obligation to repurchase, at the Repurchase Price, any Early Payment Default Loans as to which DLJMC requests repurchase. Kaiserman Affidavit at ¶7.

7.  Further, pursuant to Section 8.01 of the Purchase Agreement, Eastern American agreed to indemnify' DLJMC for any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that DLJMC may sustain in any way related to Eastern American's failure to observe and perform its duties, obligations, and covenants in strict compliance with the terms of the Purchase Agreement. *See* Purchase Agreement, Section 8.01.

8.  DLJMC discovered a number of Early Payment Default loans and requested that Eastern American repurchase those loans pursuant to Section 3.05 of the Purchase Agreement. Kaiserman Affidavit at ¶8-9.

9.  Eastern American has breached the Purchase Agreement in several respects, including, but not limited to, failing to repurchase certain loans due to Early Payment Defaults pursuant to Section 3.05 of the Purchase Agreement. Kaiserman Affidavit at ¶10.

## C. Eastern American's Failure to Comply with the May 1, 2007 Agreement

10. On May 1, 2007, the parties entered into a written agreement modifying in part the Purchase Agreement. (the **"May 1, 2007 Agreement"**; a copy is attached as Exhibit A to the Complaint). The May 21, 2007 Agreement required Eastern American to repurchase certain loans that it had previously failed to repurchase even though DLJMC had submitted written repurchase requests. Complaint at ¶¶10-15.

11. The May 1, 2007 Agreement also required Eastern American to pay $1,363.93 in loan payoff funds that Eastern American had not previously forwarded. Complaint at ¶¶ 13, 15, 16.

12. Eastern American failed to comply with its obligations under the Purchase Agreement or the May 1, 2007 Agreement. It did not repurchase loans that were required to be repurchased and it did not forward the requested loan pay-off of funds. Complaint ¶¶ 16-21.

13. As a result of Eastern American's breach DLJMC gave notice to Eastern American demanding payment and demanding that Eastern American comply with its obligations under the Purchase Agreement and the May 1, 2007 Agreement. Complaint ¶¶ 16-19.

14. The May 1, 2007 Agreement also provided that in the event of a breach of the May 1, 2007 Agreement by Eastern American:

> This letter Agreement is without prejudice to all rights and remedies DLJMC might otherwise have under the MLPA or any applicable law, regulation, rule or case law with regard to any Event of Default other than as described herein and

should not be viewed as a waiver of the same. DLJMC expressly reserves all rights and remedies available to it under the MLPA, including, without limitation, its right to exercise its remedies under the MLPA, including any failure by the Seller to abide by the terms of this Letter Agreement.

Complaint, Exhibit A.

### D. Indemnification Obligations Under the Purchase Agreement

15. Pursuant to Section 8.01 of the Purchase Agreement, Eastern American agreed to indemnify DLJMC for any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that DLJMC may sustain in any way related to Eastern American's failure to observe and perform its duties, obligations, and covenants in strict compliance with the terms of the Purchase Agreement. *See* Purchase Agreement, Section 8.01; May 1, 2007 Agreement.

16. Eastern American's indemnification obligation expressly includes the legal fees and related costs and any other costs, fees and expenses that DLJMC may sustain in connection with Eastern American's failure to observe and perform its obligations to repurchase loans and comply with its other obligations under the Agreement, including, but not limited to, the attorneys' fees and other expenses incurred in this action. See Purchase Agreement, Section 8.01; May 1, 2007 Agreement.

## PROPOSED CONCLUSIONS OF LAW

### A. This Court Has Subject Matter Jurisdiction

17. Plaintiff DLJMC is a Delaware corporation with its principal place of business in New York. Eastern American is a New Jersey corporation with its

principal place of business in Little Falls, New Jersey. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. The Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**B. This Court Has Personal Jurisdiction Over Eastern American Because Eastern American Transacted Business in New York Pursuant to the Purchase Agreement**

18. The exercise of personal jurisdiction over Eastern American in New York is proper because Eastern American has transacted considerable business in New York under the Purchase Agreement and the May 1, 2007 Agreement. DLJMC's claims against Eastern American for breach of these agreements have a substantial nexus to such business transactions.

19. New York's long arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or through an agent. . . transacts any business within the state or contracts anywhere to supply goods or services in the state." New York Civil Practice Law and Rules ("CPLR") § 302(a)(1). In order to determine jurisdiction under CPLR § 302(a)(1) "a court must decide (1) whether the defendant 'transacts any business in New York' and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, No. 04-3924, 2007 WL 1815511, at *6 (2d Cir. June 26, 2007).

**1. Eastern American Has Transacted Business in New York**

20. To determine whether a defendant has purposefully transacted business in New York, the courts will look to "the totality of the defendant's

activities within the forum." Id. (internal citations omitted). The Second Circuit has enumerated a variety of factors to guide this determination, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Agency Rent A Car System. Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted). In applying the above-listed factors, "no one factor is dispositive" and the court must look at "the totality of circumstances" concerning the defendant's interactions with, and activities within, the state. Id. Each of these factors is satisfied in this case.

21.  First, Eastern American has clearly had an on-going contractual relationship with DLJMC, spanning a period of approximately three years, during which time Eastern American has sold loans to DLJMC worth millions of dollars. See Kaiserman Affidavit at ¶¶4-5. In addition to these transactions, Eastern American exchanged emails, telephone calls and facsimiles with DLJMC, and thus projected itself into on-going and substantial commerce in New York. See Treeline Investment Partners, LP v. Koren, No. 07 Civ. 1964 (PLC), 2007 WL 1933860, at *3 (S.D.N.Y. July 3, 2007) (stating "while telephone contacts between non- domiciliary defendants and a New York party are insufficient by themselves to confer jurisdiction under CPLR 302(a)(1),... a non-domiciliary

defendant will be subject to jurisdiction if the defendant uses these telephone communications to deliberately 'project' himself into business transactions occurring within the state.") (internal citations omitted); Chong v. Healthtronics, Inc., No. CV-06-1287 (SJF)(MLO), 2007 WL 1836831, at *9 (E.D.N.Y. June 20, 2007) (stating that defendant's use of telephone, facsimiles or emails to communicate with plaintiff in New York may be sufficient to establish that the defendant transacted business in New York if the defendant intended "to project itself into ongoing New York commerce") (citing Kulas v. Adachi, No. 96 CIV. 6674Qv1BM), 1997 WL 256957, at *7 (S.D.N.Y. May 16, 1997)).

22.     The second factor used to determine whether Eastern American transacted business in New York is satisfied because the Purchase Agreement was at least partially negotiated and executed in New York and Eastern American directed meaningful communications to DLJMC in New York. The Second Circuit has stated that "we question whether in an age of email and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence." Agency Rent A Car System, 98 F.3d at 30; see Sea Tow Services International v. Pontin. 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007); see New York Islanders Hockey Club. LEP v. Comerica Bank-Texas, 71 F. Supp. 2d 108, 114 (E.D.N.Y. 1999). In Treeline, this Court held that defendant was engaged in purposeful activity in New York by negotiating sales contracts with New York plaintiffs via telephone, email and fax even though the actual contracts were not executed in New York. Treeline Investment Partners, 2007 WE 1933860, at *3. As in Treeline, Eastern American conducted email, telephone

and fax communications regarding the negotiation of and performance under the Purchase Agreement. These communications were directed to DLJMC in New York, and are sufficient to bolster the point that Eastern American transacted business in New York.

23.  The third factor in the "transacting business" test is satisfied because the Purchase Agreement contains a New York choice of law provision. "A choice of law clause is a <u>significant factor</u> in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law." <u>Sunward Elec., Inc. v. McDonald</u>, 362 F.3d 17, 23 (2d Cir. 2004)) (emphasis added). Here, section 12.04 of the Purchase Agreement, entitled "Governing Law" states:

> [t]his Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law provisions, except to the extent preempted by Federal Law. The obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Purchase Agreement, § 12.04 (emphasis added). Therefore, Eastern American invoked the benefits of New York by agreeing that New York law would govern the parties' contractual relationship. Further, the May 1, 2007 Agreement reiterated that the parties agreed that New York is the proper forum.

25.  The fourth factor in the "transacting business" test is satisfied because the Purchase Agreement requires Eastern American to send notices and payments into New York. Section 12.05 of the Purchase Agreement, entitled "Notices," requires Eastern American to direct all notices and communications to

DLJMC in New York. *See* Purchase Agreement, § 12.05. The May 1, 2007 Agreement also required payments to be made to New York.

26. Accordingly, application of each of the relevant factors demonstrates that Eastern American transacted business in New York.

27. In view of the application of the above-described factors, therefore, the Court should conclude that Eastern American transacted business in New York, and that the requirements of the first prong of New York's long-arm statute have been satisfied.

2. **This Action Arises From Transactions With DLJMC in New York**

28. The second prong of New York's long-arm statute is satisfied because DLJMC's claims against Eastern American arise out of Eastern American's business transactions within New York. To satisfy the second prong of New York's long-arm jurisdiction test, the plaintiff must "show that the causes of action 'arise out of' the defendant's transactions within the state." New York Islanders, 71 F. Supp. 2d at 114 (citing Kronisch v. United States, 150 F.3d 112, 130 (2d Cir. 1998)). "[A] claim 'arises from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." Treeline Investment Partners. 2007 WL 1933860, at *3; Best Van Lines, 2007 WL 1815511, at *6.

29. Eastern American transacted business within the State of New York through its sale of mortgage loans to DLJMC under the Purchase Agreement, and by servicing the loans under the same Purchase Agreement. DLJMC's

breach of contract and other claims are a direct result of these transactions and Eastern American's failure to perform its obligations under the Purchase Agreement. Thus, there is a clear nexus between DLJMC's causes of action and Eastern American's business transactions in New York.

30. Accordingly, for the foregoing reasons, this Court has personal jurisdiction over Eastern American.[2]

### C. DLJMC's Claim For Breach of Contract[3]

31. The general rule for measuring damages for a breach of contract is "the amount necessary to put the plaintiff in the same economic position [it] would have been in had the defendant fulfilled [its] contract." Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir. 1995).

32. Further, a party prevailing in a breach of contract action is entitled to prejudgment interest from the date that the breach occurred until the date of final judgment. See CPLR § 5001 and 5002; U.S. Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 698 (2d Cir. 1991). The statutory rate for such prejudgment interest is nine percent per annum. See CPLR § 5004; Chaman LAL Setia Exp., Ltd. v. Sawhney, No. 00 Civ. 2838, 2003 WL 21649652, at *4 (S.D.N.Y. May 28, 2003).

33. Based on the foregoing, and as set forth in the Kaiserman Affidavit, Eastern American is liable to DLJMC for damages on DLJMC's claim for breach

---

[2] The requirements of due process under the Fourteenth Amendment of the United States Constitution are also satisfied in the instant action as a result of Eastern American's extensive and purposeful transactions with DLJMC in New York.

[3] Since there is a valid contract governing the subject matter of the parties' dispute, the Court need not address DLJMC's cause of action for unjust enrichment. See ESI, Inc. v. Coastal Power Prod. Co., 995 F.Supp. 419, 436 (S.D.N.Y. 1998) (citing In re Chateaugay Corp., 10 F.3d 944, 958 (2d Cir. 1993) ("unjust enrichment is a quasi-contractual doctrine that applies only in the absence of a valid and enforceable contract").

of contract in the amount of $1,767,056.42, the sum of (a) $1,753,232.09, the amount owed, for Eastern American's failure to repurchase the Loans and to forward the pay-offs, and (b) $13,824.33 interest accrued thereon from April 21, 2008 through May 30, 2008. [4]  Kaiserman Affidavit at ¶¶19-20.

### D.  DLJMC's Claim For Indemnification

34.   Courts will enforce contractual indemnification provisions to permit one party to a contract to recover costs and legal fees from the other party in litigation between them, if the right to such costs and fees is "unmistakably clear from the language of the promise," Hooper Associates, Ltd. v. AGS Computers. Inc., 74 N.Y.2d 487, 548 N.E.2d 903, 549 N.Y.S.2d 365 (1989), or "manifest from the surrounding facts and circumstances or purpose of the agreement" Breed, Abbott & Morgan v. Hulko, 139 A.D.2d 71, 531 N.Y.S.2d 240 (1st Dep't 1988).

35.   Here, the parties' intention that DLJMC would be indemnified for attorneys' fees in suits between the parties is explicitly stated. Purchase Agreement, Section 8.01; May 27, 2007 Agreement.

36.   Based on the foregoing, and as set forth in the Pinel Declaration, DLJMC is entitled to recover $15,916.58 for professional services rendered by FBB and $673.03 in costs, amounting to $16,589.61.

## CONCLUSION

---

[4] The accrued interest has been calculated through March 31, 2008 and is set forth on Exhibit A to the Kaiserman Affidavit.  Interest on these loans accrues at the rate of $354.47 per day.  The total above reflects the amount of interest that will accrue between March 31, 2008 and May 31, 2008.

For the reasons set forth above, it is respectfully submitted that DLJMC is entitled to damages as set forth herein.

Dated: Allentown, Pennsylvania
       April 25, 2008

                              Respectfully submitted,

                              Flamm, Boroff & Bacine, P.C.

By: _____
      Robert A. Pinel, Esquire
      4905 W. Tilghman St., Suite 310
      Allentown, PA 18104
      (610)336-6800

*Attorneys for Plaintiff*
*DLJ Mortgage Capital, Inc.*