UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
DLJ MORTGAGE CAPITAL, INC.,

                Plaintiff,        07 Civ. 7933(PKL)(DFE)

      -against-             REPORT AND RECOMMENDATION
                                  TO JUDGE LEISURE

EASTERN AMERICAN MORTGAGE COMPANY,

                Defendant.
----------------------------------x

DOUGLAS F. EATON, United States Magistrate Judge.

    By order dated February 11, 2008, Judge Leisure entered a
default judgment against defendant Eastern American Mortgage
Company and in favor of plaintiff DLJ Mortgage Capital, Inc.
He referred the case to me to conduct an inquest into damages,
interest, costs and attorney's fees.  On March 6, 2008, I issued
a Scheduling Order directing Plaintiff to send me an inquest
memorandum by April 25, 2008, and directing Defendant to send me
opposition papers by May 23, 2008.

    On April 24, 2008, Plaintiff served Defendant with copies of
an inquest memorandum, an affidavit of Bruce S. Kaiserman, and a
declaration of Robert A. Pinel, Esq.  Mr. Kaiserman's affidavit
annexed (as Exh. A) the 2005 contract whereby Plaintiff purchased
loans from Defendant; it also annexed (as Exh. B) a 4/21/08
spreadsheet concerning nine loans (three of which were not
mentioned in the Complaint).  I directed Plaintiff to submit a
supplemental calculation itemizing the loans separately.

    On July 25, 2008, Plaintiff served a Supplemental Affidavit
of Mr. Kaiserman.  To date, Defendant has not filed any
opposition papers.

**BACKGROUND**

    Upon the entry of a default judgment, the Court accepts as
true all of the facts alleged in the complaint, except those
relating to the amount of damages.  *See Au Bon Pain Corp. v.
Artect Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  An inquest is then
conducted to determine the amount of damages.  Since neither side
requested a hearing, I will proceed on the basis of the Complaint
and Plaintiff's inquest papers.

- 1 -

DLJ Mortgage Capital, Inc. ("DLJMC"), a Delaware corporation with its principal place of business in New York, brought this diversity action against Eastern American Mortgage Company ("Eastern"), a New Jersey limited liability company with its principal place of business in New Jersey.  (Complaint ¶¶1, 8-9.)

In May 2005, DLJMC and Eastern entered into an "Amended and Restated Seller's Purchase, Warranties and Interim Servicing Agreement."  (Complaint ¶10; this 2005 Agreement is Exh. A to the 4/24/08 Kaiserman Affidavit.)  Eastern agreed to sell certain mortgage loans to DLJMC, and to service those loans on behalf of DLJMC.  (Complaint ¶10.)  The 2005 Agreement, in Section 3.05, provided that, upon DLJMC's written request, Eastern was obligated to repurchase any of these loans that became 30 days or more delinquent with respect to any of the first three monthly payments immediately following the applicable closing date. (Complaint ¶11; 4/24/08 Kaiserman Affidavit, Exh. A, §3.05.)

On May 1, 2007, DLJMC and Eastern entered into a letter agreement (Exh. 1 to the Complaint).  In this May 2007 Agreement, Eastern agreed to pay $1,363.93 immediately to DLJMC; this involved a payment received by Eastern on a loan identified as Hassam Zaidan.  Eastern also agreed to pay DLJMC $358,912.40, which would repurchase six specified loans during the course of twelve months - - one loan during each two-month period beginning May 1, 2007.  Those six loans were identified as Kelly, Dos Santos, Alam, Leon I, Leon II, and Devia.

Eastern has not paid the $1,363.93.  (Complaint ¶16.)  It did repurchase one loan (Devia) by paying $41,377.87 to DLJMC. (Complaint ¶17.)  Before August 31, 2007 (the deadline for repurchasing the next loan), Eastern informed DLJMC that Eastern would no longer repurchase any loans under the May 2007 Agreement.  (Complaint ¶18.)

On August 24, 2007, DLJMC sent Eastern written notice of the breaches, and warned Eastern that the entire balance of $318,898.10 would be immediately due unless Eastern cured the breaches within five days.  (Complaint ¶19.)   Eastern has failed to make any of the further payments required by the May 2007 Agreement.  (Complaint ¶¶20-21.)

## DISCUSSION

Our Court has personal jurisdiction over Eastern for the reasons set forth in the Inquest Memorandum at ¶¶18-30.  New Jersey-based Eastern entered into the contracts with New York-based DLJMC, and sold loans to DLJMC for millions of dollars.

The May 2007 letter agreement, at page 3, said:  "In the event that the Seller fails to pay DLJMC the Reimbursement Amount in accordance with the terms of this Letter Agreement, each party agrees to resolve such matter by litigation and hereby irrevocably submits to the exclusive jurisdiction of any New York State or Federal court sitting in New York County."

New York law governs this diversity case.  Both the 2005 Agreement (at Section 12.04) and the 2007 Agreement (at page 3) stated that they were to be governed by, and construed in accordance with, the substantive laws of the State of New York, without regard to its conflicts of law provisions.

Damages and Interest

As noted above, the Complaint referred only to seven loans (Hassam Zaidan, Kelly, Dos Santos, Alam, Leon I, Leon II, and Devia; see Exh. 1 to the Complaint).  The Complaint (at ¶15) said that, as of May 1, 2007, Eastern owed Plaintiff $360,275.97 with respect to those seven loans.  The Complaint (at ¶17) acknowledged that Eastern subsequently repurchased one loan (Devia) by paying $41,377.87 to Plaintiff.  Accordingly, the Complaint sought "an amount not less than $318,898.10, plus penalties and interest, ... attorney's fees and costs." (Complaint, prayer for relief.)

The 4/24/08 inquest papers sought damages for three loans that were not mentioned in the Complaint (Jackson, Finch I and Finch II).  Those three loans would add more than $500,000 in principal.  Even if we eliminate those three loans, the plaintiff is seeking damages far greater than mentioned in the Complaint. The 7/25/08 supplemental affidavit itemizes the unpaid principal balance on five loans as follows:

            Kelly Loan        $ 81,903.47
            Dos Santos Loan   $352,031.34
            Alam Loan         $378,400.00
            Leon I Loan       $188,000.00
            Leon II Loan      $ 46,959.86

This amounts to more than $1,000,000 in alleged unpaid principal. Whatever the explanation may be, the claim for principal must be capped at $318,898.10, the amount stated in the Complaint's prayer for relief.  Rule 54(c), F.R.Civ.P., after minor clarifying language changes effective 12/1/07, states:  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

- 3 -

On December 6, 2007 (after the Complaint was filed, but before Judge Leisure signed the order to show cause why he should not enter default judgment), the Second Circuit issued *Silge v. Merz*, 510 F.3d 157 (2d Cir. 2007), which said:

> .... Because complaints can be long and intricate, a lawyer is often required to help a defendant gain a full understanding of the plaintiff's claims. By limiting damages to what is specified in the "demand for judgment," the rule ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer.
>
> .... "[L]anguage ... seeking 'such other and further relief as the court may deem proper' is mere boilerplate, ...." Whatever its import in other contexts, this formulaic language cannot substitute for the meaningful notice called for by Rule 54(c), ....
>
> .... [N]otice alone is insufficient to satisfy the rule. The timing and method of such notice (*i.e.*, that it come *before* the decision to default and be evident from the face of the complaint) are both critical to the analysis. ...

*Silge*, 510 F.3d at 160-61. The Second Circuit agreed that Silge's damages had to be "capped at $1,153,545, the figure specified in the ad damnum clause," plus costs. *Id.* at 159.

**Accordingly, I recommend that DLJMC's damages must be capped at $318,898.10, plus penalties, interest, attorney's fees and costs.** The Complaint did not give "meaningful notice" of any greater damages; its prayer for relief requested judgment:

> (a) against Eastern American in an amount not less than $318,898.10, plus penalties and interest, in an amount to be proven at trial;
>
> (b) requiring Eastern American to pay all attorney's fees and costs incurred by Plaintiff in initiating and pursuing this litigation; and
>
> (c) for any and all such relief to which Plaintiff is entitled at law or equity.

- 4 -

I turn now to the issue of whether the prayer's reference to "interest" was sufficient notice of an award for pre-judgment interest.  Interestingly, in *Silge* the complaint alleged that the defendants had repaid only "portions of the Loan, the outstanding balance of which is $1,153,545, as of March 31, 2005," and the demand for relief sought judgment "in the sum of $1,153,545, on either the first or second counts, together with costs and disbursements and such other and further relief which this Court deems just and proper."  *Silge*, 510 F.3d at 158.  The Second Circuit affirmed Magistrate Judge Peck and Judge Daniels, who determined "that the outstanding balance of the loan when the defendants stopped making payments [in 2002] was $751,510.41," and that Rule 54(c) required the damages to be capped at $1,153,545, which was "inclusive of prejudgment interest up to March 31, 2005."  *Id.* at 159.  The Second Circuit agreed that Rule 54(c) precluded any further pre-judgment interest (for the period from April 2005 until the January 2006 judgment).  It commented that "Silge could easily have drafted a complaint that included a distinct claim for 'pre-judgment interest' in the demand clause."  *Ibid*.  This left unclear what the result would have been if Silge's demand clause (like the one in the case at bar) had asked for a dollar amount "plus penalties and interest."

In the case at bar, the Complaint clearly sought "interest" and, although it did not specify "pre-judgment" interest, it annexed the May 2007 letter agreement, which said at pages 3-4 that "DLJMC shall have the right to enter a judgment against the Seller [Eastern] for the Reimbursement Amount plus accrued interest at the maximum amount permitted under applicable law ...."

In a case very similar to the case at bar, and brought by the same plaintiff, the Complaint (drafted by a different law firm) requested a judgment "Ordering [defendant] to repurchase [specified loans] for the amount of $19,912,598.70 as of January 19, 2007, plus interest."  *DLJ Mortgage Capital, Inc. v. Sunset Direct Lending, LLC*, 07 CV 1418 (HB)(THK), Doc. #1.  After a default judgment, Mr. Kaiserman's 6/3/08 supplemental affidavit sought pre-judgment interest at the New York statutory rate of 9%.  Magistrate Judge Katz agreed; he mentioned the *Silge* district court opinion in passing but did not discuss it; three pages later he wrote:  "[A] prevailing party in a breach of contract action is entitled to prejudgment interest from the date that the breach occurred through the entry of judgment.  *See Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998) ...; *see also* N.Y.C.P.L.R. §5001."  *DLJ Mortgage Capital, Inc. v. Sunset*, 2008 WL 4489786, *7 (S.D.N.Y. June 23, 2008 R&R, adopted by Judge Baer Oct. 6, 2008); *see* Magistrate Judge Katz's n.4 and Judge Baer's

agreement at *3 that "Plaintiff is entitled to additional
prejudgment interest until the date on which the judgment is
entered."

In *Mohan v. LaRue Distributors, Inc.*, 2008 WL 4822266
(E.D.N.Y. Oct. 27, 2008), a damages inquest in an employment
discrimination case, Magistrate Judge Mann had cited *Silge* and
recommended that Mohan receive no pre-judgment interest; Judge
Block then distinguished *Silge* and wrote (*2) Mohan's "complaint
requested 'interest' *twice* in its prayer for relief - - albeit
without specifying in either instance whether *pre-* or *post-*
judgment interest was intended," (*4) "pre-judgment interest on
Mohan's back pay award would not result in a total award larger
that the amount requested in her complaint's *ad damnum* clause,"
and (n.3) "pre-judgment interest on back pay ... is part and
parcel of the *purpose* of the back pay award" and therefore does
not "differ in kind" from the back pay award itself.

In *RLI Insurance Co. v. King Sha Group*, 598 F.Supp.2d 438
(S.D.N.Y. 2009), Golden Vale Construction Corp. defaulted on a
cross-claim that its negligence caused cost overruns and lost
revenue for a garage owner.  The cross-claim had simply sought
judgment in "an amount not finally determined, but believed to be
in excess of $1,000,000."  Magistrate Judge Maas recommended an
award of $326,089 for cost overruns and $578,302 for lost revenue
but, citing *Silge*, he wrote:  "Since [the owner] did not
specifically demand prejudgment interest [or any interest], the
Court cannot award it based solely on its boilerplate request for
'other and further relief.'"  *RLI Insurance*, at 446 (there were
no objections to the R&R, and Judge Kaplan adopted it at 440).

I think the case most on point is *DLJ Mortgage Capital, Inc.
v. Sunset, supra*.  There, DLJMC's Mr. Kaiserman sought pre-
judgment interest at the statutory 9% rate in his 6/3/08
supplemental affidavit.  While the issue was still pending before
Magistrate Judge Katz, Mr. Kaiserman took a slightly different
tack in his 7/25/08 supplemental affidavit to me; he asked for
pre-judgment interest at the rate specified in the various loans.
This worked out to less than 9% (because the loans for Kelly, Dos
Santos, Alam, and "Leon I" had interest rates ranging from 7.50%
to 8.75%, although the rate was 13.375% for the smallest loan,
"Leon II").  On the other hand, Mr. Kaiserman was computing that
interest on a unpaid principal that was more than triple the
$318,898.10 which I believe should be the maximum allowable for
unpaid principal.

I recommend that Judge Leisure award pre-judgment interest
at the New York statutory rate of 9% per year for the period

- 6 -

after August 29, 2007, which was five days after DLJMC sent
Eastern notice of breach.   (See Complaint, ¶¶19-20.)   I find that
DLJMC's Complaint (filed 9/10/07) gave Eastern adequate notice
under Rule 54(c) that default judgment would lead to 9%
prejudgment interest, because the Complaint's prayer for relief
sought "an amount not less than $318,898.10, plus penalties and
interest," and because the Complaint annexed the May 2007 letter
agreement, which said at pages 3-4:

> ... The matter shall be resolved in accordance
> with the laws of the State of New York. ....   DLJMC
> shall have the right to enter a judgment against the
> Seller for the Reimbursement Amount plus accrued
> interest at the maximum amount permitted under
> applicable law ...."

As noted earlier, the applicable law is the law of New York,
and N.Y.C.P.L.R. §5001 calls for pre-judgment interest at the
rate of 9% per annum.   This translates to a monthly rate of 0.75%
per month.   Thus the monthly interest is $318,898.10 x 0.0075 =
$2,391.74.   Starting from Eastern's deadline to cure its breach
(August 29, 2007), the pre-judgment interest will amount to 20
months as of April 29, 2009; and 20 x $2,391.74 = $47,834.80.

<u>Attorney's Fees and Costs</u>

The May 2007 letter agreement (Exh. 1 to the Complaint)
stated at page 3:   "The prevailing party in any such action shall
be awarded its reasonable attorneys' fees and costs."

I have reviewed the 4/25/08 declaration of Robert A. Pinel,
Esq. and its Exh. A (detailing the hours spent by him from
8/20/07 to 4/23/08 and by his paralegal on 4/22/08) and Exh. B
(three invoices for serving Eastern with the summons and
complaint on 9/28/07, and with the order to show cause on
2/20/08, and with the default judgment on 2/23/08).   I find the
hours to be reasonable to the extent of 52.4 hours for Mr. Pinel
and 2.0 hours for the paralegal.   I also find the hourly rates to
be reasonable ($250 for Mr. Pinel and $95 for his paralegal).

I recommend that Judge Leisure award the following amounts
for attorney's fees and costs:

| | |
|---|---|
| For Attorney Pinel | $13,100.00 |
| For his paralegal | 190.00 |
| For Court filing fee | 350.00 |
| For Guaranteed Subpoena Service, Inc. | 189.85 |
| For Federal Express | 105.43 |

```
For Intellius background check           25.80
For Pacer legal research                 65.47
                                    $14,026.55
```

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, I recommend that Judge Leisure enter judgment against the Eastern American Mortgage Company, and award plaintiff:

   (a) damages in the amount of $318,898.10;
   (b) pre-judgment interest at the rate of 9% per year (0.75% per month, i.e., $2,391.74 per month), hence $47,834.80 from 8/29/07 through 8/29/09;
   (c) attorney's fees and costs in the amount of $14,026.55.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy (i.e., **no later than May 13, 2009**), by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Peter K. Leisure, U.S.D.J. at Room 1910, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), and 6(d). Any request for an extension of time must be addressed to Judge Leisure.

DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175
Fax: (212) 805-6181 fax

Dated:     New York, New York
           April 24, 2009

Copies of this Report and Recommendation were mailed on this date to:

Robert A. Pinel, Esq.                    (also by electronic filing
Flamm, Boroff & Bacine, P.C.             to Mr. Pinel)
Westfield Corporate Center
4905 West Tilghman St., Suite 310
Allentown, PA 18104

Eastern American Mortgage Company
201 Lower Notch Road, Suite 2
Little Falls, NJ 07424

Eastern American Mortgage Company
124 Sunset Avenue
Verona, NJ 07044

Hon. Peter K. Leisure